# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **TROY CRANDALL WIMBERLEY,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO. 17-00558-B** |
| | * | |
| **NANCY A. BERRYHILL,** | * | |
| **Acting Commissioner of Social** | * | |
| **Security,** | * | |
| | * | |
| **Defendant.** | * | |

## ORDER

Plaintiff Troy Crandall Wimberley (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.*  On October 23, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case.  (Doc. 16).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  (Doc. 17).  Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

# I.   __Procedural History__[1]

Plaintiff protectively filed his application for benefits on March 26, 2015. (Doc. 10-5 at 2). Subsequently, he filed an application for benefits on March 30, 2015, alleging disability beginning February 7, 2014, based on lower back and neck disorders and spina bifida. (__Id.__ at 4, 8; Doc. 10-6 at 15). Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Ben E. Sheely (hereinafter "ALJ") on November 22, 2016. (Doc. 10-2 at 41; Doc. 10-4 at 2). Plaintiff, who was represented by counsel, appeared by video from Evergreen, Alabama at the hearing and provided testimony related to his claims. (Doc. 10-2 at 12, 44-59). A vocational expert ("VE") also appeared at the hearing and provided testimony. (__Id.__ at 59-62). On February 9, 2017, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (__Id.__ at 9). The Appeals Council denied Plaintiff's request for review on October 24, 2017. (__Id.__ at 2). Therefore, the ALJ's decision dated February 9, 2017, became the final decision of the Commissioner. (__Id.__).

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument

---

[1]    The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

was conducted on November 27, 2018, and the parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issues on Appeal

1. **Whether the ALJ reversibly erred by failing to weigh all the medical evidence of record and failing to state the particular weight he gave different medical opinions and the reasons therefor?**

2. **Whether the ALJ erred in failing to develop a full and fair record by ordering a consultative orthopedic examination?**

3. **Whether the ALJ erred by failing to adequately evaluate Plaintiff's subjective complaints of pain?**

## III. Factual Background

Plaintiff was born on September 9, 1971, and was forty-five years of age at the time of his administrative hearing on November 22, 2016. (Doc. 10-2 at 44; Doc. 10-5 at 8). Plaintiff has a tenth or eleventh grade education and can read and write. (Doc. 10-2 at 44; Doc. 10-6 at 16). Plaintiff last worked from 2010 to February 2014 at Walmart, first in the garden center, then in sporting goods, and finally in security. (Doc. 10-2 at 45-46; Doc. 10-6 at 5, 33). Plaintiff was terminated from that job due to poor job performance, which he attributed to his physical condition. (Doc. 10-2 at 47; Doc. 10-6 at 15). Prior to that, Plaintiff prepared concrete pipes from 2006 to 2008 and worked as a wood stacker at a sawmill from 2005 to 2006. (Doc. 10-2 at 46-

47; Doc. 10-6 at 33). From 1999 to 2005, Plaintiff worked as a barge crane and forklift operator. (Doc. 10-2 at 47; Doc. 10-6 at 33).

At his hearing, Plaintiff testified he is no longer able to perform his security job because of pain in his lower back, neck, and legs. (Doc. 10-2 at 47). His medical treatment for neck and lower back problems has consisted of taking medications, physical therapy, and multiple injections. (Id. at 48-50; Doc. 10-7 at 46, 50, 60, 64). Plaintiff also reported headaches, which have been treated with medication, including Topamax and Trokendi. (Doc. 10-2 at 58; Doc. 10-7 at 128).

## IV. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the correct legal standards were applied.[2] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based

---

[2]    This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

upon substantial evidence. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991). "Substantial evidence is more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983). In determining whether substantial evidence exists, a reviewing court must consider the record as a whole, taking into account evidence both favorable and unfavorable to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, at *4 (S.D. Ala. June 14, 1999).

## V.   **Statutory and Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); <u>see also</u> 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining whether a claimant has proven his or her disability. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she is not engaged

in substantial gainful activity.  Carpenter v. Comm'r of Soc. Sec.,
614 F. App'x 482, 486 (11th Cir. 2015) (per curiam).  The second
step requires the claimant to prove that he or she has a severe
impairment or combination of impairments.  Id.  If, at the third
step, the claimant proves that the impairment or combination of
impairments meets or equals a listed impairment, then the claimant
is automatically found disabled regardless of age, education, or
work experience.  Id.  If the claimant cannot prevail at the third
step, the ALJ must determine the claimant's residual functional
capacity ("RFC") before proceeding to step four.  Id.  A claimant's
RFC is an assessment, based on all relevant medical and other
evidence, of a claimant's remaining ability to work despite his or
her impairments.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th
Cir. 1997).  Once a claimant's RFC is determined, the evaluation
proceeds to the fourth step, where the claimant must prove an
inability to perform his or her past relevant work.  Carpenter,
614 F. App'x at 486.

If a claimant meets his or her burden at the fourth step, it
then becomes the Commissioner's burden to prove at the fifth step
that the claimant is capable of engaging in another kind of
substantial gainful employment which exists in significant numbers
in the national economy, given the claimant's RFC, age, education,
and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir.
1985) (per curiam).  If the Commissioner can demonstrate that there

are such jobs the claimant can perform, the burden then shifts back to the claimant to prove his or her inability to perform those jobs in order to be found disabled. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

## VI.  The ALJ's Findings

In the case *sub judice*, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease and degenerative joint disease. (Doc. 10-2 at 14).  The ALJ also found that Plaintiff's headaches are non-severe because they cause no more than a minimal limitation in Plaintiff's ability to perform basic work activities. (Id. at 14-15).  The ALJ found that Plaintiff's impairments, when considered individually and in combination, do not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Id. at 15).  The ALJ further found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations: Plaintiff can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and he can never climb ladders, ropes, or scaffolds. (Id.).  The ALJ concluded that Plaintiff is able to perform his past relevant work as a security guard, cashier, and barge crane operator, and that there are also other jobs in the

national economy that he is able to perform, such as airline security representative and poultry dresser. (Id. at 18-19). Thus, the ALJ found that Plaintiff is not disabled. (Id. at 19).

VII. **Discussion**

   A. **The ALJ properly weighed and discussed the medical evidence of record, and substantial evidence supports the ALJ's Residual Functional Capacity for a range of light work with the stated restrictions.**

Plaintiff argues that the ALJ failed to properly weigh all the medical evidence of record and to state with particularity the weight he gave to different medical opinions provided in this case and the reasons therefor. (Doc. 12 at 6). The Commissioner counters that Plaintiff's arguments fail because he has not shown that the ALJ's findings as to his functional limitations were not supported by substantial evidence. (Doc. 13 at 5). Based on a careful review of the record, the Court finds that Plaintiff's arguments are without merit.

   1. **Medical Evidence.**

The record reflects that on November 10, 2014, Plaintiff presented for treatment to his family medicine physician, Dr. Charles M. Eddins, M.D. (Doc. 10-7 at 18). Plaintiff reported neck pain and low back pain and radiating symptoms. (Id.). On November 17, 2014, Dr. Eddins noted that Plaintiff's lumbosacral spine x-rays showed severe degenerative changes at L5-S1, while his cervical spine x-rays were within normal limits. (Id. at 17).

Dr. Eddins referred Plaintiff to William J. Bose, M.D., an orthopedist, who saw Plaintiff on two occasions. (See id. at 10-13, 17). Dr. Bose sent Plaintiff for cervical and lumbar spine MRIs on December 10, 2014. (Id. at 13). Plaintiff's cervical spine MRI was negative, while his lumbar spine MRI revealed discogenic disease at L5-S1 including a small central broad-based protrusion, and left asymmetric bulging laterally encroaching on the exiting L5 nerve root, as well as mild facet arthropathy. (Id. at 5-6). Dr. Bose assessed Plaintiff with cervical pain/cervicalgia, lumbar degenerative disc disease, and occipital neuralgia and recommended referral to a neurologist for work up and treatment of occipital neuralgia. (Id. at 10-11).

On January 6, 2015, Plaintiff was examined by Donald R. Tyler, M.D., a neurosurgeon at Coastal Neurological Institute, for complaints of neck pain, bilateral arm pain, bilateral arm and hand numbness, low back pain, and left leg pain and numbness. (Id. at 37). Dr. Tyler diagnosed Plaintiff with low back pain, cervicalgia, and lumbar and cervical degenerative disc disease. (Id. at 40).

At Dr. Tyler's request, Plaintiff first presented to Jonathan C. Rainer, M.D. at Coastal Neurological Institute on January 14, 2015. (Id. at 52). This was the beginning of a treatment relationship that would involve frequent visits and last more than a year. At the initial visit, Dr. Rainer diagnosed Plaintiff with

myalgia/arthromyalgia/myositis, cervicalgia, lumbar spine degenerative disc disease, unspecified musculoskeletal disorder of the neck, and low back pain. (Id. at 56). Dr. Rainer prescribed Gabapentin and Tizanidine and noted there were no surgical plans. (Id.). He recommended an epidural steroid injection for Plaintiff's lumbar pain[3] and physical therapy and medication changes for Plaintiff's "myofascial cervical symptoms and facet generated pain[.]" (Id.). In March 2015, after Plaintiff reported continuing lower back and neck pain with radicular symptoms, Dr. Rainer recommended a right occipital block[4] and ordered physical therapy. (Id. at 42, 45-46). The next month, Plaintiff told Dr. Rainer that his right occipital block had provided partial relief for a few days before his radicular cervical spine pain returned. (Id. at 70).

Plaintiff had MRIs of the lumbar spine, cervical spine, and brain done on May 20, 2015. (Id. at 86-89). The lumbar spine MRI

---

[3] Plaintiff underwent right L5-S1 lumbar interlaminar epidural steroid injections on January 20, 2015, March 3, 2015, and February 25, 2016, a bilateral L5-S1 transforaminal epidural injection on August 4, 2015, and a caudal epidural steroid injection on September 10, 2015. (Doc. 10-7 at 42, 47, 108, 129, 136). Plaintiff typically reported partial and temporary pain relief from these injections. (See id. at 42, 47, 103, 119).

[4] Plaintiff underwent a right occipital block on April 1, 2015. (Doc. 10-7 at 70). He also had medial branch blocks on the left at C4-C6 and on the right at C2-C4 performed on May 7, 2015 and on February 25, 2016. (Id. at 65, 137).

showed Grade 1 retrolisthesis at L5 on S1 and a right paracentral disc osteophyte complex with facet arthropathy and mild bilateral neuroforaminal stenosis. (Id. at 87). The MRI of the cervical spine showed no acute findings, but the brain MRI showed minimal pansinusitis and scattered foci of increased intensity on FLAIR within the white matter including the centrum semiovale, which was noted to be "nonspecific but can be seen with migraines[.]"[5] (Id. at 89).

On July 1, 2015, Plaintiff returned to Dr. Rainer and reported neck pain radiating to the right shoulder and anterior bicep and headaches. (Id. at 60). He also reported that his medications were helping to make his pain tolerable. (Id.). Plaintiff showed positive impingement signs in his right shoulder and a positive Speed's test on the right, but Dr. Rainer noted "[t]here were certainly no pathology on his 2014 MRI indicative of neural impingement." (Id. at 63-64). Dr. Rainer performed a right subacromial bursa injection for Plaintiff's "shoulder impingement/biceps tendinitis," from which Plaintiff reported

---

[5]     On July 29, 2015, Dr. Rainer reviewed the May 2015 MRI images. (Id. at 130). He noted that the cervical spine was "essentially unchanged from 2014 MRI." (Id.). He found the new lumbar MRI significant for mild L4-L5 and L5-S1 facet arthropathy with severe L5-S1 disc degeneration including foraminal stenosis bilaterally and noted that Plaintiff's other lumbar discs appeared in good condition, his alignment was normal, and there was no evidence of fracture. (Id.).

temporary forty percent relief.  (Id. at 64, 130).

On July 17, 2015, Plaintiff saw neurology resident Jordan Combs, M.D. at the University of South Alabama Hospital with a chief complaint of chronic back pain.  (Id. at 90).  Dr. Combs' physical examination of Plaintiff showed normal gait, decreased range of motion of the bilateral upper and lower extremities, and reproducible numbness with crossing of legs.  (Id. at 91).  Dr. Combs referred Plaintiff to neurosurgery for possible surgical management or epidural block.  (Id.).

On September 3, 2015, Plaintiff presented to neurosurgeon Anthony M. Martino, M.D. at the University of South Alabama Department of Neurosurgery for evaluation of his lower back, neck, and shoulder pain.  (Id. at 94).  Dr. Martino's neurological examination of Plaintiff was normal.  (Id. at 94-95).  Dr. Martino reviewed Plaintiff's recent MRIs and noted that the cervical MRI was stable and the lumbar MRI revealed degenerative changes but "no significant evidence of nerve root compression."  (Id. at 95).  Dr. Martino recommended physical therapy and stated that no further neurosurgical intervention was recommended, as Plaintiff "is not a surgical candidate."  (Id.).

After reviewing Plaintiff's May 2015 MRIs, Dr. Rainer referred Plaintiff to neurologist Charles S. Markle, M.D. at Coastal Neurological Institute for his headache and cervical complaints, because they "may all stem from migraine."  (Id. at

130, 134).  Plaintiff first saw Dr. Markle on August 7, 2015.  (Id. at 124).  He reported having headaches for eight months with associated dizziness, visual aura, and photophobia.  (Id.).  Dr. Markle noted that Plaintiff's brain MRI "did show some white matter changes consistent with migraine or ischemic changes."  (Id.).  He prescribed medication for Plaintiff's headaches and recommended that Plaintiff quit smoking.  (Id. at 128).  In a follow-up visit twelve days later, Plaintiff reported having less headaches with the Topamax but getting a "brief 'sharp pain' in the head" every time he took the medication. (Id. at 114).  Dr. Markle changed Plaintiff's headache medication to Trokendi 50 mg.  (Id. at 118).

On October 1, 2015, Plaintiff told Dr. Markle that his headaches were less severe and less frequent with Trokendi.  (Id. at 98).  Dr. Markle stated that "last time [Plaintiff] seemed to have some hand numbness but he really denies that now."  (Id.). Dr. Markle increased Plaintiff's dosage of Trokendi to 100 mg daily.  (Id. at 102).  In January 2016, Plaintiff reported radiating neck and lower back pain and headaches to Dr. Rainer. (Id. at 138).  However, he also reported getting relief from injections and medications, which "allow[ed] him to function daily[,]" and Dr. Rainer noted that Plaintiff's medications were helping "to a significant degree[.]"  (Id.).

Thereafter, the record reflects that Plaintiff visited Dr. Eddins for a check-up on May 30, 2016.  (Doc. 10-8 at 19).  Dr.

Eddins' notes reflect that he had not seen Plaintiff since 2014. (Id.). He assessed Plaintiff with abdominal pain, gastroesophageal reflux disease, and weight loss, which Plaintiff attributed to being more active and "working on his diet." (Id.).[6]

### 2. The ALJ's Findings.

The ALJ amply summarized Plaintiff's relevant clinical examination findings. Examinations of Plaintiff performed during the dates of treatment summarized above yielded the following findings: bilateral cervical and lumbar muscle spasm; decreased cervical range of motion; cervical tenderness; positive cervical compression distraction; increased cervical paraspinal tone with a forward deviated posture; positive Spurling's test; positive impingement signs in the right shoulder and positive Speed's test on the right; positive Tinel's sign; decreased range of motion of the upper and lower extremities; tenderness to palpation over the right occipital protuberance; lumbar tenderness with decreased flexion and pain with extension; reduced range of motion in the lower back; decreased light touch sensation in the bilateral C6 distribution versus median nerve but otherwise normal sensation; pain caused by walking on toes and heels; numbness caused by

---

[6] Dr. Eddins' subsequent records from June, July, and October 2016 show that he prescribed various medications for Plaintiff, including diclofenac, Horizant, Effexor, Tramadol, and Trokendi. (Doc. 10-8 at 16-18).

crossing of legs; and positive straight leg raise. (See Doc. 10-7 at 10, 13, 17-18, 40, 44, 49-50, 55, 63, 68, 72-73, 77, 82-83, 91, 100, 106, 112, 116-17, 122, 126-27, 133, 141). Other physical examination findings during this same period reflect full and pain-free range of motion in the shoulders and upper and lower extremities; no spinal deformity or scoliosis; no motor or sensory deficits; negative Spurling's results; no deformity in the extremities with normal, full, or functional range of motion of all joints; full or normal strength in both upper and lower limbs; negative Hoffman's sign bilaterally; negative Tinel's sign; negative Babinski's sign bilaterally; negative Romberg's test; good grip strength bilaterally; full and functional muscle strength and tone; normal reflexes; normal gait; normal posture; and normal neurological exam results. (See id. at 10, 13, 17-18, 39-40, 44-45, 49-50, 55, 63, 68, 72-73, 77-78, 82-83, 91, 94-95, 100-01, 106, 112, 116-17, 122, 126-27, 133, 141).

In addition to Dr. Martino's statement that Plaintiff is not a surgical candidate, the physician who primarily treated Plaintiff's neck and back-related complaints, Dr. Rainer, consistently noted that conservative management options were explained and that "[t]here are no surgical plans at present."[7]

---

[7]     Dr. Tyler also noted that "[c]onservative (non-surgical) management options were explained" and that "[t]here are no surgical plans." (Doc. 10-7 at 41). However, on the same page of his treatment record, Dr. Tyler wrote: "Details and possible

(See, e.g., id. at 56).  Further, the records of Dr. Rainer and Dr. Markle show that Plaintiff's pain was relieved, albeit partially and generally temporarily, by medication and injections. (See id. at 42, 47, 60, 65, 70, 98, 103, 114, 119, 138).

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians.  In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so.  See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).  The failure to do so is reversible error.  See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, at *4, 2009 WL 413541, at *1 (M.D. Fla. Feb. 18, 2009).

The ALJ must give "substantial weight" to the opinion of a claimant's treating physician, unless "good cause" exists for not doing so.  Costigan v. Comm'r, Soc. Sec. Admin., 603 F. App'x 783, 788 (11th Cir. 2015) (per curiam) (citing Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam)). "The opinion of a one-time examining physician" is not entitled to the same deference as that of a treating physician.  Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, at *50, 2010 WL 989605, at *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160).

---

complications of the proposed surgery were discussed."  (See id.). Thus, it appears that surgery was discussed and ruled out.

Also, an "ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause to discredit the testimony of *any* medical source exists when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, at *8, 2012 WL 3155570, at *3 (M.D. Ala. Aug. 3, 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock, 764 F.2d at 835 (citation omitted); Adamo v. Comm'r of Soc. Sec., 365 F. App'x 209, 212 (11th Cir. 2010) (per curiam) ("The ALJ may reject any medical opinion if the evidence supports a contrary finding.").

Although an ALJ's explanation of his decision must

17

sufficiently explain the weight given to obviously probative exhibits, an ALJ need not discuss every piece of evidence, so long as the decision enables the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.  See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam).[8]

Plaintiff first complains that the ALJ "did not discuss the opinion" of his "primary pain specialist, Dr. Donald Tyler, other than to state that the treatment consisted of physical therapy, injection therapy, anti-inflammatory, muscle relaxant and pain medications." (Doc. 12 at 6).  This argument lacks merit for a number of reasons.  First, the record flatly contradicts Plaintiff's characterization of Dr. Tyler as his "primary pain

---

[8]    Plaintiff cites the unpublished decision in Baez v. Comm'r of Soc. Sec., 657 F. App'x 864 (11th Cir. 2016) (per curiam), in support of his contention that the ALJ reversibly erred by failing to weigh and address with the requisite particularity several medical "opinions" contained in the record. (See Doc. 12 at 7-8).  In Baez, the court vacated and remanded a case to the Commissioner for further proceedings because the ALJ failed to assign weight to the diagnosis made by a treating physician whose records, even without a medical source statement, were "comprehensive[,]" and because the ALJ failed to discuss the opinion of an examining physician.  See Baez, 657 F. App'x at 870. The panel in Baez noted that "[m]edical reports should include medical source statements that discuss what a claimant can still do despite any impairment" but found that the absence of such a statement by a treating doctor did not "relieve the ALJ from the duty to assign substantial or controlling weight to the opinion of a treating physician absent good cause to the contrary."  Id. at 870.  For the reasons stated infra, the Court does not find the result in Baez to be controlling in this case.

specialist." Dr. Tyler examined Plaintiff only once, during his initial evaluation at Coastal Neurological Institute. The record reflects that all of Plaintiff's subsequent treatment at Coastal Neurological Institute was with Dr. Rainer, who primarily treated Plaintiff's complaints relating to his neck and back, and with Dr. Markle, who primarily treated Plaintiff for headaches. According to Social Security regulations, a treating source is an acceptable medical source that provides a claimant "with medical treatment or evaluation and has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Dr. Tyler was not a treating provider whose opinion the ALJ was required to accord to substantial weight absent good cause shown, because he only examined Plaintiff once and had no ongoing treatment relationship with him. See Medina v. Soc. Sec. Admin., 636 F. App'x 490, 493 (11th Cir. 2016) (per curiam).

Further, Plaintiff fails to specify any relevant medical opinion that was offered by Dr. Tyler and not considered by the ALJ.[9] The records from Coastal Neurological Institute were unaccompanied by a medical source statement, and the only notations

_____

[9] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical and mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

from Dr. Tyler that could be construed as "medical opinions" were his diagnoses of Plaintiff with low back pain, cervicalgia, lumbar spine degenerative disc disease, and cervical spine degenerative disc disease, which Dr. Tyler did not expand upon. (See Doc. 10-7 at 37-41). Although the ALJ did not mention Dr. Tyler by name in his decision, he found Plaintiff's degenerative disc disease to be a severe impairment, and his decision cited Plaintiff's complaints of neck pain, cervical radiculopathy, low back pain, and lumbar radiculopathy that were documented by Dr. Tyler, as well as Dr. Tyler's examination findings of muscle spasm, normal range of motion in the upper and lower extremities, normal gait and posture, and normal strength. (See Doc. 10-2 at 16; Doc. 10-7 at 39-40). Dr. Tyler's diagnoses are not in dispute, and nowhere in his notes did Dr. Tyler suggest that Plaintiff had any functional limitations beyond than those found by the ALJ. See Harry v. Colvin, 2016 U.S. Dist. LEXIS 121084, at *44, 2016 WL 4708009, at *15 (N.D. Ga. Sept. 8, 2016) ("Unlike the facts of Baez, the lack of a definitive diagnosis is not a concern in this case since Ms. Harry's BPD diagnosis is not being questioned and was considered by the ALJ. In addition, the treating physician in Baez had 'comprehensive' treatment records that the ALJ assigned no weight. Here, Dr. Sandhu's original diagnosis is found within a two-page document."); Figueroa v. Comm'r of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, at *16, 2017 WL 4992021, at *6 (M.D. Fla. Nov.

2, 2017) ("[A] diagnosis of a condition does not establish that Plaintiff has additional work-related limitations.").

Even assuming *arguendo* that the ALJ should have expressly discussed Dr. Tyler's evaluation of Plaintiff and expressly assigned his diagnoses some weight, it would not have changed the decision in any way. Accordingly, any error by the ALJ in failing to specifically discuss and assign weight to Dr. Tyler's diagnoses was harmless. See Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) ("Although the ALJ did not explicitly state what weight he afforded the opinions of Hahn, Fritz, Shivashankara, and Gornisiewicz, none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless. That is, while each of these doctors found that Wright suffered from chronic pain or conditions associated with chronic pain, not one of these doctors indicated that Wright is unable to perform sedentary work as a result of that pain.") (internal citation omitted); Gosline v. Berryhill, 2017 U.S. Dist. LEXIS 219256, at *18, 2017 WL 8222661, at *6 (M.D. Ga. Dec. 5, 2017) ("Where the failure to articulate and assign weight to medical opinions would not change or contradict the ALJ's determination, however, the error is harmless."), report and recommendation adopted, 2018 U.S. Dist. LEXIS 41395, 2018 WL 1321039 (M.D. Ga. Mar. 14, 2018); Tillman v. Comm'r, Soc. Sec. Admin., 559 F. App'x 975, 975-76 (11th Cir. 2014) (per curiam)

(finding the ALJ's failure to expressly weigh two medical opinions harmless because the ALJ expressly considered and discussed the evidence on which the doctors based their opinions).

Of course, Dr. Rainer and Dr. Markle both had ongoing treatment relationships with Plaintiff and were therefore treating sources whose medical opinions the ALJ was required to assign controlling or substantial weight absent good cause to the contrary. The ALJ's decision fails to mention Dr. Rainer and Dr. Markle by name, but it does include multiple citations and references to the Coastal Neurological Institute records. (See Doc. 10-2 at 14, 16-17). Indeed, the ALJ's decision documents the complaints made by Plaintiff to his treating doctors at Coastal Neurological Institute, their relevant examination findings, and their treatment of Plaintiff with medications and injections. (See id.).

The undersigned is satisfied that the ALJ thoroughly reviewed the records from Coastal Neurological Institute and adequately referenced the relevant portions thereof. Neither Dr. Rainer nor Dr. Markle submitted a medical source statement discussing what Plaintiff is able to do despite his diagnosed impairments. Thus, any medical opinions offered by Dr. Rainer and Dr. Markle consisted primarily of their diagnoses, which are not at issue, and the Court can find no opinion from either doctor indicating that Plaintiff's functional limitations exceed those found by the ALJ. Accordingly,

the ALJ's failure to articulate the weight assigned to any medical opinions contained in the treatment records from Coastal Neurological Institute did not materially impact his decision, and any error in failing to assign weight to such opinions was harmless.

Likewise, Plaintiff's allegation that the ALJ did not discuss the "opinions" of his treating orthopedist, Dr. Bose, is not well-taken. Similar to Dr. Rainer and Dr. Markle, the only statements in Dr. Bose's notes that were arguably "medical opinions" were his interpretations of radiological studies and his diagnoses of cervical pain/cervicalgia, lumbar degenerative disc disease, and occipital neuralgia. (See Doc. 10-7 at 10-13). Although the ALJ did not mention Dr. Bose by name, he cited and referenced Dr. Bose's brief office notes from Plaintiff's two dates of treatment multiple times in his decision. (See Doc. 10-2 at 16-17). Thus, assuming *arguendo* that the ALJ erred in not expressly assigning weight to Dr. Bose's diagnoses, any such error was harmless.

Plaintiff further complains that the ALJ did not discuss the opinion of orthopedist Guy Rutledge III, M.D., who saw Plaintiff for low back pain on September 1, 2011, more than two years before the alleged onset date of his disability. (See Doc. 12 at 8; Doc. 10-7 at 4). However, in addition to the fact that Dr. Rutledge did not treat or examine Plaintiff during the relevant period, his opinions, to the extent he offered any, were consistent with the

ALJ's findings and with the medical evidence discussed by the ALJ. Dr. Rutledge reviewed lumbar spine x-rays, which showed disc narrowing at L5-S1 with a traction spur at L5, and diagnosed Plaintiff with lumbar spondylosis. (Doc. 10-7 at 4). Dr. Rutledge's physical examination was normal, revealing no local tenderness, free hip range, negative straight leg raise, intact pulses, and normal reflexes. (Id.). Dr. Rutledge told Plaintiff his underlying condition was "not caused by his work but could be aggravated by his work" and gave Plaintiff a slip to return to work. (Id.). Based on the foregoing, the undersigned is satisfied that nothing in Dr. Rutledge's 2011 office note required reference in the ALJ's decision, and Dr. Rutledge's office note certainly does not suggest that Plaintiff had any additional or more severe impairments or limitations than those found by the ALJ.

Plaintiff also faults the ALJ for not discussing the August 24, 2011 radiology report of Carl Blunck, M.D. (Doc. 12 at 8). Dr. Blunck's impression from a lumbar spine series of x-rays was as follows: "Moderate diffuse spondylitic and degenerative disc changes which have a more severe accelerated degenerative disc change at L5-S1. These findings are accelerated for clinically listed age. There is otherwise no evidence of significant alignment abnormality or vertebral body compression. No other acute changes." (Doc. 10-7 at 27). However, as the ALJ discussed, the record contains more recent radiology reports from the alleged

disability period, including lumbar spine x-rays and MRIs from 2014 and 2015.  There was no reason for the ALJ to discuss findings from a series of x-rays done more than two years before the onset of Plaintiff's alleged disability which, in any event, were similar to the results of the more recent studies.

Although Plaintiff concedes that the ALJ weighed and discussed the opinions of Dr. Martino with the requisite particularity, he nevertheless argues that the ALJ failed to properly characterize Dr. Martino's records.  (Doc. 12 at 6).  As noted above, Dr. Martino found Plaintiff's 2015 cervical spine MRI to be stable and his 2015 lumbar spine MRI to show degenerative changes at L5/S1 with grade I spondylolisthesis and no significant evidence of nerve root compression.  (Id. at 95).  Dr. Martino recommended no further neurosurgical intervention, stated that Plaintiff was not a surgical candidate, and recommended that Plaintiff begin physical therapy for his neck and low back.  (Id.).  Dr. Martino offered no opinion pertaining to any functional limitations Plaintiff may have.  (See id. at 94-95).  Plaintiff asserts that the ALJ "failed to state that Dr. Marino's [sic] neurological recommendation against surgery applied only to the plaintiff's cervical (neck) problems."  (Doc. 12 at 6).  However, a fair review of Dr. Martino's records shows that his recommendation against surgery clearly applied to both Plaintiff's neck and lower back, and the Court can find no error in the ALJ's

characterization of Dr. Martino's findings.

While Dr. Bose, Dr. Tyler, Dr. Rainer, Dr. Martino, and Dr. Markle all did not offer opinions as to Plaintiff's functional capacity and limitations, the record contains medical opinions concerning Plaintiff's ability to function, the first provided by a non-examining State agency reviewer and the second furnished by Plaintiff's family medicine physician, Dr. Eddins. The record shows that on June 10, 2015, a State agency medical reviewer, Eugene Saiter, M.D., reviewed Plaintiff's medical records and completed a Physical RFC assessment, wherein he opined that Plaintiff is able to perform light work, except that he can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, never climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to unenclosed heights. (Doc. 10-3 at 14-16). The ALJ accorded substantial weight to Dr. Saiter's assessment because his opinions were generally consistent with the record as a whole. (Doc. 10-2 at 17).

Based on the evidence detailed above, the Court finds that Dr. Saiter's opinions are consistent with the substantial medical evidence in this case and do not conflict with the credible opinions of any treating or examining sources. Therefore, the ALJ properly accorded them substantial weight. See Harris v. Colvin, 2014 U.S. Dist. LEXIS 159749, at *25, 2014 WL 5844240, at *8 (S.D. Ala. Nov. 12, 2014).

The record further reflects that Dr. Eddins submitted a Clinical Assessment of Pain ("CAP") form dated December 2, 2016, wherein he opined that Plaintiff's "[p]ain is present to such an extent as to be distracting to adequate performance of daily activities or work[,]" and that physical activity would greatly increase Plaintiff's level of pain "to such a degree as to cause distraction from task or total abandonment of task."  (Doc. 10-8 at 26).  Beneath his signature, Dr. Eddins added the following handwritten qualification: "I am not the physician who is primarily treating this patient's musculoskeletal pain.  I was asked for my opinion based on his appointments with me in the past – the above represents this limited evaluation by me."  (Id. at 27).  The ALJ stated that he gave Dr. Eddins' "overly restrictive" assessment little weight, because although Dr. Eddins was a treating source, Dr. Saiter's assessment was more consistent with the record as a whole, and because Dr. Eddins acknowledged that his assessment was based on limited information since he was not the primary treater of Plaintiff's musculoskeletal complaints.  (Doc. 10-2 at 17-18).

The Court agrees that the ALJ had good cause to discount Dr. Eddins' opinions as to the degree and limiting effects of Plaintiff's pain.  First, Dr. Eddins himself characterized his evaluation as "limited" because of his very minor role in treating and evaluating Plaintiff's musculoskeletal complaints.  Further, the objective medical evidence, and in particular the relevant x-

rays and MRIs, simply does not support Dr. Eddins' highly restrictive assessment of Plaintiff's ability to function. Plaintiff's medical records document a uniformly conservative treatment plan, no hospitalizations, and frequently normal physical examination findings. Moreover, Plaintiff's treatment records show that the medications and injections provided by his treating physicians at Coastal Neurological Institute provided partial relief and allowed him to function daily. And, Dr. Eddins indicated on the CAP form that while Plaintiff would experience some side effects from his prescribed medications, they would not be to such a degree as to create serious problems in most instances. (Doc. 10-8 at 26). In sum, the foregoing substantial evidence is inconsistent with the opinions of severe pain limitations offered by Dr. Eddins.

Based on all of the foregoing, the Court is also satisfied that substantial evidence supports the ALJ's RFC determination that Plaintiff can perform a range of light work with the stated restrictions. Therefore, Plaintiff's claim must fail.[10]

---

[10] Although Plaintiff has cited evidence in the record which he claims supports a finding that he is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa, 2017 U.S. Dist. LEXIS 181734, at *15, 2017 WL 4992021, at *5 ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the

28

**B. The ALJ did not err in failing to develop the record by not ordering a consultative orthopedic examination.**

Plaintiff next argues that the ALJ failed to develop a full and fair record by not ordering a consultative orthopedic examination. (Doc. 12 at 8). The Commissioner counters that it was Plaintiff's own burden to produce evidence of his disability and that, in any event, the record contained sufficient medical evidence and other evidence of Plaintiff's functional limitations. (Doc. 13 at 9). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

It is well-established that a hearing before an ALJ in a social security case is inquisitorial and not adversarial. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007). A claimant bears the burden of proving disability and of producing evidence in support of his claim, while the ALJ has "a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); see also Ingram, 496 F.3d at 1269.

In fulfilling the duty to conduct a full and fair inquiry, the ALJ is required to order a consultative examination where the

---

doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether *this* finding is.") (emphasis in original).

record establishes that such an examination is necessary to enable the ALJ to render a decision. <u>Holladay v. Bowen</u>, 848 F.2d 1206, 1210 (11th Cir. 1988). However, the ALJ is not required to order a consultative examination where the record contains sufficient evidence to permit the ALJ to make an informed decision. <u>Ingram</u>, 496 F.3d at 1269. Further, "there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." <u>Brown v. Shalala</u>, 44 F.3d 931, 935 (11th Cir. 1995) (per curiam). In evaluating the necessity for a remand, the Court is guided by "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." <u>Id.</u> (citations and internal quotation marks omitted).

In the instant case, the record before the ALJ included the medical records from the physicians who treated and evaluated Plaintiff for his musculoskeletal complaints and headaches, and the record contains no discernible evidentiary gaps related to those impairments. The record includes many physical and neurological examination findings from various providers. Additionally, the record contains the results of multiple radiology studies, including x-rays of Plaintiff's cervical and lumbar spine and MRIs of Plaintiff's lumbar spine, cervical spine, and brain, some of which were reviewed by multiple doctors. The

ALJ also had before him the evaluation by the State agency medical reviewer.

The ALJ provided an accurate summary of Plaintiff's medical treatment, including Plaintiff's treatment or evaluation by Dr. Eddins, Dr. Bose, Dr. Tyler, Dr. Rainer, Dr. Combs, Dr. Markle, and Dr. Martino. Contrary to Plaintiff's assertion, the ALJ did not "disregard[] medical opinions of orthopedists in the record." (See Doc. 12 at 8). The ALJ referenced the findings of Dr. Bose, the orthopedist who treated Plaintiff during the relevant period, more than once. (See Doc. 10-2 at 16-17).

In view of the robust record of treatment and examinations, including x-ray and MRI evidence, the undersigned finds that the evidence before the ALJ was more than sufficient to allow him to render an informed decision. Indeed, the undersigned can detect no conflict, ambiguity, evidentiary gap, or other insufficiency in the medical evidence that would have required a consultative orthopedic examination for the ALJ to make an informed decision. Thus, the ALJ was not required to order a consultative orthopedic examination, and accordingly, Plaintiff's claim that the ALJ failed to develop the record must fail.

>        C.    **The ALJ did not err in his evaluation of Plaintiff's subjective symptoms, including pain.**

Last, Plaintiff argues that the ALJ failed to adequately evaluate his subjective complaints of pain. (Doc. 12 at 9).

Specifically, Plaintiff argues that the ALJ failed to fully review and consider the entire record and only selectively referred to medical records, and that the ALJ failed to comply with Social Security Ruling 16-3p ("SSR 16-3p") in evaluating the intensity, persistence, and limiting effects of Plaintiff's subjective complaints of pain.[11] (Id. at 9-12). The Commissioner counters that the ALJ adequately considered Plaintiff's complaints of pain and "properly found Plaintiff's allegations to be unreliable." (Doc. 13 at 10-11). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

When a claimant attempts to establish disability based on his pain or other subjective symptoms, he must satisfy two parts of a three-part "pain standard" that requires

> (1) evidence of an underlying medical condition and
> either (2) objective medical evidence that confirms the
> severity of the alleged pain [or other symptoms] arising

---

[11]    SSR 16-3p, which superseded SSR 96-7p, was enacted to provide "guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims under Titles II and XVI of the Social Security Act . . . . SSR 16-3p, 81 Fed. Reg. 14166, 14166 (Mar. 9, 2016). SSR 16-3p eliminated the use of the term "credibility" in the sub-regulatory policy and stressed that, when evaluating a claimant's symptoms, the adjudicator will "not assess an individual's overall character or truthfulness" but will instead focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce a claimant's symptoms and, given the adjudicator's assessment of the claimant's symptoms, whether the intensity and persistence of those symptoms limit the claimant's ability to work. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1308 (11th Cir. 2018) (per curiam) (citing SSR 16-3p, 81 Fed. Reg. 14166 at 14167, 14171).

from that condition or (3) that the objectively
determined medical condition is of such a severity that
it can be reasonably expected to give rise to the alleged
pain [or other symptoms].

Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per

curiam). "If the objective medical evidence does not confirm the

severity of the claimant's alleged symptoms but the claimant

establishes that he has an impairment that could reasonably be

expected to produce her alleged symptoms, the ALJ must evaluate

the intensity and persistence of the claimant's alleged symptoms

and their effect on his ability to work."[12]  Spears v. Berryhill,

---

[12]    SSR 16-3p provides:

Consistent with our regulations, we instruct our
adjudicators to consider all of the evidence in an
individual's record when they evaluate the intensity and
persistence of symptoms after they find that the
individual has a medically determinable impairment(s)
that could reasonably be expected to produce those
symptoms. We evaluate the intensity and persistence of
an individual's symptoms so we can determine how
symptoms limit ability to perform work-related
activities for an adult . . . .
. . .
In evaluating an individual's symptoms, our adjudicators
will not assess an individual's overall character or
truthfulness in the manner typically used during an
adversarial court litigation. The focus of the
evaluation of an individual's symptoms should not be to
determine whether he or she is a truthful person.
Rather, our adjudicators will focus on whether the
evidence establishes a medically determinable impairment
that could reasonably be expected to produce the
individual's symptoms and given the adjudicator's
evaluation of the individual's symptoms, whether the
intensity and persistence of the symptoms limit the

2017 U.S. Dist. LEXIS 160385, at *16, 2017 WL 4340508, at *6 (N.D. Ala. Sept. 29, 2017) (citing 20 C.F.R. § 416.929(c)-(d); Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam)).

"In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and [his] doctors." Strickland v. Comm'r of Soc. Sec., 516 F. App'x 829, 831 (11th Cir. 2013) (per curiam) (citing 20 C.F.R. § 404.1529(c)(1)-(2)); see also SSR 16-3p, 81 Fed. Reg. 14166 at 14168 ("In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."). The ALJ also considers other factors set forth in the regulations, including a claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of medication; any treatment other

---

individual's ability to perform work-related activities . . . .

SSR 16-3p, 81 Fed. Reg. 14166 at 14167, 14171.

than medication; other measures used by the claimant to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. Strickland, 516 F. App'x at 831-32 (citing 20 C.F.R. § 404.1529(c)(3)); see also SSR 16-3p, 81 Fed. Reg. 14166 at 14169-70. The ALJ then will examine the claimant's statements about the intensity, persistence, and limiting effects of symptoms in relation to all other evidence and consider whether there are any inconsistencies or conflicts between those statements and the record. Strickland, 516 F. App'x at 832 (citing 20 C.F.R. § 404.1529(c)(4)); see also SSR 16-3p, 81 Fed. Reg. 14166 at 14170.

The ALJ is not required to accept a claimant's allegations of pain or other symptoms. Spears, 2017 U.S. Dist. LEXIS 160385, at *16, 2017 WL 4340508, at *6. However, if the ALJ decides not to credit a claimant's statements about his pain or other subjective symptoms, "the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious" as to the finding. Strickland, 516 F. App'x at 832 (citing Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam)). Failure to articulate the reasons for discrediting testimony related to pain or other subjective symptoms requires, as a matter of law, that the testimony be accepted as true. Holt, 921 F.2d at 1223. When the ALJ's reasons for discrediting a claimant's statements about pain or other symptoms are clearly articulated and supported by

substantial evidence in the record, a reviewing court will not disturb the ALJ's findings. Foote, 67 F.3d at 1562.

After a thorough review of both the ALJ's decision and the administrative record, the undersigned is satisfied that, in counter to Plaintiff's argument, the ALJ's decision is based upon a careful review of the record in its entirety. Indeed, while the ALJ's decision generally does not chronicle Plaintiff's individual dates of treatment, it nevertheless fairly and accurately documents Plaintiff's relevant subjective complaints, diagnoses, treatment and results thereof, radiology studies, and clinical findings. Further, contrary to Plaintiff's complaint that the ALJ selectively cited the record to support his findings regarding the intensity, persistence, and limiting effects of Plaintiff's pain, the decision cites multiple findings both favorable and unfavorable to Plaintiff's claim of disability.

In evaluating Plaintiff's subjective symptoms, the ALJ followed the process outlined in SSR 16-3p, which required him to first determine whether Plaintiff had a medically determinable impairment that could reasonably be expected to produce his alleged symptoms and, if so, to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms and determine the extent to which Plaintiff's symptoms limit his ability to perform work-related activities. See SSR 16-3p, 81 Fed. Reg. 14166 at 14167-68. The ALJ described Plaintiff's statements of his symptoms,

including, *inter alia*, neck pain and cervical radiculopathy and lower back pain and lumbar radiculopathy that are a seven or eight on a ten-point scale, even with medication, along with an inability to lift five pounds, sit for more than ten minutes at a time or two hours in a day, stand for more than five minutes at a time or one hour in a day, and walk for more than ten minutes at a time or one hour in a day. (Doc. 10-2 at 16). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his "statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Id. at 16). The ALJ then devoted several subsequent paragraphs to discussing Plaintiff's medical complaints, clinical examination results, radiology findings, and treatment. (Id. at 16-17).

There is no question that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his pain and other symptoms were not fully supported by the objective medical evidence in the record.[13] As the ALJ noted, Plaintiff's treating

---

[13] "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

or examining physicians recorded many normal musculoskeletal and neurological examination findings. (See Doc. 10-2 at 16-17; Doc. 10-7 at 10, 13, 17-18, 39-40, 44-45, 49-50, 55, 63, 68, 72-73, 77-78, 82-83, 91, 94-95, 100-01, 106, 112, 116-17, 122, 126-27, 133, 141). The ALJ also cited the results of the 2014 x-rays of Plaintiff's cervical spine and lumbar spine and the results of MRIs performed in December 2014 and May 2015. (Doc. 10-2 at 16-17). Of note, both of Plaintiff's cervical spine MRIs produced no acute findings, and although Plaintiff's lumbar spine MRIs showed degenerative changes and nerve root encroachment at L5-S1, Dr. Martino stated that Plaintiff's May 2015 lumbar MRI showed no real evidence of nerve root compression. (Doc. 10-7 at 6, 88-89, 95). The ALJ properly considered the above objective medical evidence in evaluating the intensity and persistence of Plaintiff's symptoms and determining the extent to which Plaintiff's symptoms limited his ability to perform work-related activities.[14] In addition, the ALJ explained that he did not find Plaintiff's

---

[14]    See 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work. We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

allegations of disabling symptoms to be fully consistent with the evidence of Plaintiff's conservative treatment, with no hospitalizations or surgery recommendations.[15] (Doc. 10-2 at 17).

Further, Dr. Saiter, a State agency medical reviewer, offered findings that conflicted with Plaintiff's alleged symptoms, which the ALJ discussed and accorded substantial weight. (See Doc. 10-2 at 16-17). Contrary to Plaintiff's statements about his symptoms and related functional limitations, Dr. Saiter opined that Plaintiff is able to occasionally lift and/or carry twenty pounds, frequently lift or carry ten pounds, stand and/or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and can occasionally stoop, crouch, and crawl. (Doc. 10-3 at 14-15).[16]

---

[15] See 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v) ("Factors relevant to your symptoms, such as pain, which we will consider include: . . . (v) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms.").

[16] See SSR 16-3p, 81 Fed. Reg. 14166 at 14169 ("Medical evidence from medical sources that have not treated or examined the individual is also important in the adjudicator's evaluation of an individual's statements about pain or other symptoms. For example, State agency medical and psychological consultants and other program physicians and psychologists may offer findings about the existence and severity of an individual's symptoms. We will consider these findings in evaluating the intensity, persistence, and limiting effects of the individual's symptoms. Adjudicators at the hearing level or at the Appeals Council level must consider the findings from these medical sources even though they are not bound by them.").

Based on the foregoing, substantial evidence supports the ALJ's determination that Plaintiff's statements regarding his pain and other symptoms were not entirely consistent with the evidence of record.  Further, the ALJ adequately articulated his reasons for not fully crediting Plaintiff's statements about his pain and other symptoms, which specifically included a discussion of the objective medical evidence that was inconsistent with Plaintiff's testimony about the severity of his alleged symptoms and Plaintiff's conservative course of treatment.  (See Doc. 10-2 at 16-17).  Thus, the ALJ did not err in evaluating Plaintiff's allegations of pain and other subjective symptoms, and Plaintiff's claim must fail.

## VIII. <u>Conclusion</u>

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

**DONE** this **29th** day of **March, 2019.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
